The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. Good afternoon, Council. You'll see from the screen that Justice DeArmond is here present in the oral argument. However, they've had, due to some cutting of a table or a line, he's only able to call in, so you won't see him. But he's fully participating, and I'm sure you'll hear from him. This is 4-22-0942, State Farm Mutual Automobile v. The Linda Jenkins. Will the counsel for the appellant please state your name for the record? Patrick O'Shaughnessy. Thank you. And for the appellee? Cameron Ash. Thank you. Mr. O'Shaughnessy, you may begin. Thank you, Your Honor. Do I reserve a specific amount of time for rebuttal at this point? Five minutes. Yes, sir. Sounds good. May it please the Court, my name is Patrick O'Shaughnessy. I represent the Linda Jenkins in this appeal. This is an uninsured motorist claim, and it's a very unusual one. There's no other Illinois appellate court opinion that I've been able to find that has a similar set of facts, although some other jurisdictions have faced issues that are presented here. So, the Linda Jenkins was a passenger in a vehicle being driven by her husband. She was injured when that vehicle left the roadway to avoid a collision with another vehicle driven by Tanya Haynes. The Haynes vehicle had turned left in front of the Jenkins vehicle, and the Linda broke her back in this collision. Now, what makes this case unique is two very specific issues. Number one is the investigating police officer interviewed Haynes, the tortfeasor, but he did not document any identification information for her vehicle. No VIN, no license plate, and he did not list her as a party to the collision on the police report, only as a witness. The second unusual... Yes? Before you get to the second, if I might ask a question, good afternoon, with respect to what you just mentioned. Will you let us know, please, why wasn't it your responsibility to furnish what State Farm requested as proof of Haynes' uninsured status? That is, any one of the three things that they demanded. Sure. All three of those were not reasonably obtainable under the circumstances. I can go through each of the three if you'd like at this point. Why don't you do that? Is the standard that it has to be reasonably obtainable? I believe that should be the standard, yes, and that's what the line of cases from other states pushes. So, what we're trying to establish is how you would prove a negative, how a driver has no insurance in light of her refusal to communicate, cooperate, or appear, and in light of this deeply flawed police report, which doesn't give the basic information. So, when the State Farm Council asks for three examples, and none of these are requirements under law, they're examples they come up with, and in 99% of the cases, they're the right ones, but we can't get an affidavit from Haynes because she refuses to cooperate. Also, can I pose a question right here, and that is, in the underlying case, do you have personal service on Haynes? Yes, she was served by the Sheriff's Office in Macomb. Continue. Yes, and we also have communications attempts with Haynes before serving her. So, Valinda Jenkins comes to me a year after the collision to look into it. Like usual, we send a letter to the tortfeasor because we have no insurance information from the police report, and we get no response. We find a second address for her in the same town and send it certified. That one works. We have her signature on the certified receipt. It says, send us your information for insurance or have them contact me. Nothing. That's when a lawsuit was filed. At this point, first service failed. She moved again. So, we hire a private investigator, find a new address in McDonough County, and then she's effectively served there. No answer, no appearance. So, going back to the initial question, the second thing, since she won't cooperate with us, is a letter of denial from her insurance company that was requested. We can't provide that reasonably because we can't identify an insurance company. The third thing that was requested as an example would be a certification from the but here's my problem with it. It's hollow. It's empty. And here's why. So, when a person is in a collision, they receive this. It's an example. It's the Illinois Motorist Report. It's a triplicate. So, it works like a carbon. The police report's on top. The officer puts unit one, unit two. They transfer down to these red forms. This is the form that has the instructions to send it the Department of Transportation. Now, the police report itself was copied into the briefs. Tanya Haynes is not a party. She never would have received the red form. She never would have sent it in. After 120 days, her failure to send it in could create a rebuttable presumption that she was uninsured, but that's why it's empty and hollow because she never had the legal obligation to send it in in the first place. So, if we got that, it can be rebutted very easily, but it's not worth anything. So, that's the dilemma we're facing. That's why I believe in order to show that the plaintiff, or in this case the claimant, has exhausted their ability to prove the insurance status of the tortfeasor, you have to stick with We could stalk Tanya Haynes. That's probably not a good idea. We could try to hang around her garage to see if that Chevy Cruze that was mentioned in the narrative is parked there. That's probably not a good idea. I believe we've taken all reasonable approaches here, and so here's what we've done. We attempted to communicate in writing, certified. That didn't work. So then, next step, try to compel her appearance by filing a lawsuit. We spend the $400. We file it. Now she's moved again. So, now we have to hire a private investigator, which we did. We found her. We served her. She doesn't show up. So, I file a motion for default. I give her notice of the motion for default, and she doesn't appear at that either. I get the default. That is exhausting the reasonable remedies to try to figure out if she has insurance. Go ahead. Finish your sentence. Sure, and what I believe is this provides very strong circumstantial evidence that she is, in fact, uninsured because if a person acts in their own economic self-interest, her failure to hand over that insurance is exposing herself to tremendous personal liability for no reason whatsoever. Does the state policy define what constitutes sufficient proof of lack of insurance? There's no definition in the statute, in the administrative regulations, or in the policy itself. It's basically proof that there is no insurance. There's not anything deeper than that. Now, some of the other cases cited have a little more detail. One of the ones cited by State Farm is Miranda v. Coronet. That's an interesting case because in that case, the policy required that letter from the Department of Transportation. State Farm doesn't have that in their policy. These other cases I've talked about, and this started with a New York case, I think, in the 1960s, and they're cited in my brief, was it acknowledges this dilemma where claimants can find themselves in, where you have an invasive, unapproachable, unresponsive tortfeasor, and how difficult it is to prove a negative in those situations. What that line of cases, starting in New York and extending to at least 12 other states since then, has stated is, plaintiff has to show that all reasonable attempts were made to ascertain insurance. If you don't find insurance, then the burden shifts to the insurance company, in this case, to see if they have any evidence themselves that the tortfeasor was insured. I think that's a very sound reasoning in a situation like this. That goes to one other interesting thing with regard to our affirmative defenses. State Farm paid the Jenkinses for their property damage, nearly $6,000, and there's a deductible still out there that the Jenkins had to pay. So, this gives State Farm subrogation rights. They have rights against Tanya Haynes as well to recover what they paid, and the deductible that the Jenkinsons had lost. And so, at about the four and a half year mark, after this collision happens, Ken Jenkins gets a letter from State Farm saying that they are closing their file. They were not able to make any recovery from the at-fault party in this case, which I believe also shows very strong evidence that State Farm had nothing on their own end to show that Tanya Haynes was insured. And that's relevant both for the affirmative defense we pled of clean hands, but also with regard to this burden-shifting analysis that plaintiff has all reasonable attempts, has found nothing, and neither has the defendant found anything, in which case it should be now presumed that she was uninsured, which corresponds with the circumstantial evidence itself that if she was insured, she would have given it to her insurance company. And if an insurance company is given the tender of the lawsuit, it is almost near certainty they would make an appearance. It's a very rare occasion where an insurance company gets the claim and doesn't file an appearance in the circuit court. Counsel, if we draw the inference that she didn't want to submit, I mean, that's her to her insurance company, perhaps the premiums would have gone up. I mean, isn't that a reasonable inference as well as the one you mentioned? It is an inference that can be drawn. Here is where I would talk about whether or not it's a reasonable one. And unfortunately, when we get into this topic, we're all going with anecdotal examples and information. So I've been doing this for 30 years. And yes, we have run across people who served with a lawsuit, don't want to turn it over to their insurance company. And in every occasion that I can think of on that, that person shows up at the case management conference themselves to argue it's not their fault. This person's faking it, something like that. They don't not turn it over to the company and refuse to appear at the hearings as well. That was striking me as very unusual. Again, just personal experience. So in light of those reasons, I believe it can be found the claimant in this case, Melinda Jenkins, has acted reasonably to pursue all avenues of determining the insurance. They have all been unsuccessful. And based on that, the circumstantial evidence here strongly points to Tanya Haynes not having insurance and State Farm should cover this uninsured claim. Thank you, counsel. Any questions? Mr. Ash? Thank you. Please support Cameron Ash behalf of the appellee State Farm. The facts were well laid out by counsel in this case, you know, the really the main issue here is what we can both describe as a faulty police report filled out by the investigating officer, which is really led to the issues with this claim. However, the main issue here is whether or not the appellant has provided sufficient proof of law such that the uninsured motorist provisions of her policy are triggered. And I think it's important to note that this is not a coverage for where you're unable to recover from the at fault party in general. It's coverage where you're unable to recover from the at fault party because the at fault party did not maintain insurance automobile insurance covering that accident. That's the purpose, the legislative purpose of mandating liability insurance and mandating that these policies contain provisions for uninsured motorist claims. To the extent it was asked whether or not to counsel whether or not the policy provides a specific definition for proof of loss. I think we've admitted that it does not provide a specific definition. However, this policy and policies with similar provisions have previously been about analyzed by multiple courts in this state. And essentially, it's the reasonable definition of a proof of loss is proof that there is no insurance covering the at fault driver here that was contained in the state farm versus Leon matter with risk. Excuse me, counsel. Good afternoon. You heard the council detail all of the steps that were taken in order to obtain this information. What is unreasonable about the steps that they took the number of steps the type of actions that they took in order to get that there was no insurance. Well, the steps taken, I think, can be, you know, it's, it's really in effect, two letters and filing a complaint against against Miss Haynes. They obtained an order of default against her when she failed to appear. And but there was also the, you know, there are additional steps that could have been taken, you know, console argues it's against her economic interest to not respond to this complaint and to not appear in court, but there's no judgment against her, there's an order of default, there's no economic detriment as far as she knows right now. And the point that was made, I believe, in my brief, and you're questioning the council is there's just as much reasonable speculative speculative interest inference, rather, excuse me, that can be drawn to the fact that she never provided this if she had an insurance carrier to her insurance carrier, because that could have raised her premiums. I think that's speculative, but I think it's no more speculative than to assume that just because she didn't appear that she was uninsured. And with respect to the other steps, I think, council essentially admitted that submitting a motorist report at 11 months after the accident or a year, whenever counsel was retained would have been hollow and would have, you know, presuming that Ms. Haynes didn't file a motorist report, which we don't know, presuming that that is the case, that the information we would have received that she didn't file a report is indicative of the fact that she didn't comply with the state requirement for auto liability insurance. That if the argument is that's hollow, and it would have been a rebuttable presumption, then I'm not sure I necessarily disagree with that. But that would have that would have provided the plaintiff's burden of proof that there was no insurance coverage. And then it would have been the burden on State Farm to rebut that. So I think that's an additional reasonable step that could have been taken here. Does the policy specify the specific kinds of proof that were required to show no insurance? And no, it doesn't specify anything specific. And the three examples that I believe were in my letter to counsel and in our discovery requests, that's not an exhaustive list. I think it's council mentioned those are 99.9% of the time those are the items that are provided to establish that there is no insurance for the at fault driver and uninsured motorist claims. But what we have here, you know, we, I would I would agree with counsel that the first two are difficult if the the tortfeasor doesn't respond to you. Again, the response here was to two letters. There's no judgment order entered against her, they could have done that and mailed her a judgment order for a significant amount of money. And how would that have changed anything? Well, if the argument is that there's an economic detriment, and that circumstantially would have led to the, you know, to the fact that if she didn't, if she had an insurance carrier, she would have turned it over to her insurance carrier. But, you know, at this point, there is no economic detriment, as far as we know it, to that extent, it's speculative. But the, you know, we, there just simply isn't any evidence that this individual was not insured at the time of the accident. Well, didn't State Farm have equal access to this information? I mean, and in that way, this, these facts are distinguishable from Leon, correct? I would equal access to the to the police report and to the letters that were provided by counsel. Yes, because they were provided to us. Whenever the claim was made, yes, we have equal access to that information. But it's not State Farm's burden or duty under the policy to establish that the other driver wasn't insured at the time of the accident. It's, it's the duty under the policy of the insured to establish and provide sufficient proof of loss, i.e. proof that there's no insurance coverage covering the tortfeasor. And that's the claimant's burden. And I guess that goes to the to the argument that counsel made with respect to the letter that Mr. Jenkins received that State Farm was unable to collect from the at fault party. I, you know, State Farm has no affirmative duty to go after the property damage subrogation rights, they do have the right to do so, but there's no obligation that they do so. They also, you know, that letter doesn't, you know, doesn't mean that, oh, we've exhausted all of our efforts or reasonable efforts to find Miss Haynes, that letter. I've seen it in other cases. I understand this is anecdotal. I've seen it in other cases where there is an insurance company on the other side, and they say no, you're insured was at fault. We're not paying anything. Mr. Jenkins would have got the same if that was the case here. So the fact that State Farm didn't recover any property damage subrogation is really irrelevant to the issue at hand as to whether sufficient proof of loss that there was an uninsured motorist involved in this accident. Again, even if even the hollow I dot letter, that would have, you know, arguably, I think that would have under the current case law, that would have provided the sufficient burden such that it would have been back on State Farm to prove that some other exclusion applied based on that letter or to rebut the presumption from the Secretary of State. The circumstantial evidence here, I've kind of already gone through and answering your questions. But there are plenty of inferences that can be drawn from the circumstantial evidence here. Really, the only evidence here is that she failed to respond to a couple of letters against her. I won't go into the economics of it again. But I think that one important point in terms of the circumstantial evidence in this case is what we will agree is a police report. Ms. Haynes was cited in this police report. She received a citation, I believe it was for an improper left-hand turn. Something showing that she was at fault for this loss based on the police officer investigation. Council mentioned that police officer spoke with her. There's one citation she didn't receive, which is failure to produce insurance to the police officer. If she had no insurance, I think it's reasonable to assume that the police officer also would have cited her for that while citing her for being at fault for this accident where an individual was injured. Again, the circumstantial evidence here it doesn't establish a probable inference that Ms. Haynes was uninsured for the reasons I've already stated. As to the affirmative defenses, I've already mentioned why a receipt of any property damage, subrogation, payments from Haynes is irrelevant. And I believe we touched on the latches argument. But that argument fails because there's no Jenkins here. If she had provided that information, the time passage wouldn't have prejudiced her. If she had provided sufficient proof of loss, it would have been covered. But State Farm didn't request the specific information or the means of providing it until much, much later, years later. Isn't that correct? And how is that not prejudicial? They might have taken some steps in light of what was asked to be produced specifically. I would agree with that. I think that most of the efforts that were made by the claimant here in terms of establishing or attempting to gain the cooperation or determine the status of Ms. Haynes occurred before the formal demand was made. I think there are no statute of limitations issues here. But quite frankly, all the information that Ms. Haynes is contractually obligated to provide the State Farm, that has existed at the time of the loss. I don't think there's any indication here that what has been requested was somehow spoliated by the passage of time. And again, if nothing else, we've got the IDOT argument where yes, perhaps it's a hollow report from the IDOT indicating that she failed to comply with insurance for failure to report within the 20-day time period. But again, that would have provided sufficient and at least to meet the claimant's burden to prove sufficient loss, it would have put the ball back in State Farm's court. So I don't think that there's any evidence that was lost or could not be obtained simply by the fact that State Farm didn't ask for anything specifically for some period of time after the loss. And ultimately, I think I would just come back to it again. It's not coverage for circumstances where for whatever reason, you're not able to recover from the at-fault party in general. It's coverage where you've established that you were in an accident with a person that did not maintain liability insurance to cover your injuries or damages. That's the legislative purpose. That's what the contract provides for. The proof of loss to establish that Ms. Haynes was uninsured here is two letters addressed to her, a complaint, a motion in order for default, and a police report that didn't contain any information regarding the lack of insurance on the part of Ms. Haynes. None of those items provides any indication whatsoever as to her insurance status. And the last thing, in terms of the reasonable person standard, I don't believe that that's the law in Illinois or all reasonable standard. I don't believe that this case calls for changing the burden of proof on the insured that has been around for decades. But just to address that merchants case, in the merchants matter, which is the case that is from New York Supreme Court and has been cited in a few other state courts. In that case, we had a situation where two people are involved in an accident and one driver flees. In any event, the claimant's attorney contacts the motor vehicle department and is told this person has insurance through Allstate. They contact Allstate who tells them no, the policy was canceled. And then they re-contacted the motor vehicle department and said, you're correct, our prior correspondence was an error. We have information that the policy was canceled. They also obtained proof that the vehicle that the claimant was involved in had been stolen, had been operated by a 18-year-old sailor who was AWOL at the time of the accident. Essentially in that case, the insurance company's argument was, yes, you've proved that the vehicle itself was uninsured. However, you didn't prove that the individual who stole the vehicle and operated it intoxicated didn't have his own policy of insurance. It's distinctly different from the facts here. Again, if State Farm had obtained a letter from the insurer or from the motor vehicle department stating that there was no insurance, as has previously been stipulated, there would have been coverage here. Or at least she would have met her burden of proof establishing that this loss fell within the corners of her uninsured motorist coverage. I could go through a couple other ones in State Farm versus Matlock. It's another one that used that standard. In that case, the only information provided was a statement that the person was told by his insurance agent that, I think I know this guy and he doesn't have insurance. In that case, the Texas court had not yet determined the allocation of burden of proof in an insurance claim or an uninsured motorist claim. Here, Illinois has been pretty clear that the burden is on the insured to establish that it falls within the coverage. Then the burden shifts the insurer to prove that there's some exclusion that bars coverage. To the extent that we're asking for the reasonable person standard made in Merchant, the facts of that case were remarkably different than what they are here. Essentially, that case states that you've exhausted all reasonable efforts and those efforts were fruitless. Again, I'm not going to go over the Illinois Department of Transportation issue again. I've said it enough. I don't believe that would have been fruitless and there's no evidence that that wasn't done. If the court is inclined to adopt a reasonable person standard here, I don't believe that all reasonable steps have been taken and the court should still affirm the whole thing. Thank you. Is there any questions? No. Seen, hearing none, rebuttal. Thank you, Your Honor. I'm going to stick with just the last couple of minutes of Mr. Asch's reply. The IDOT search is the definition of fruitless because this isn't a reasonable person standard. This is a reasonable efforts standard and it's reasonable efforts to ascertain the existence of a policy. Under this situation, using the loophole to get a rebuttable presumption because the tortfeasor never even had the forms or the knowledge he had to send them in is not anything designed to determine the existence of a policy. It's a trick. My dog at home has a certificate by his bed saying he's a minister and a Scottish lordholder. Doesn't mean it does any effect. It's something you can easily accomplish through the system. The line of cases that start with merchant insurance, now the New York case, yeah, that has its own fact pattern. But if you went through these, I'm just going to point out two and give a sentence each. The Washington case and the Missouri case are very close to what we have here. In the Washington case cited in the brief, Signal Insurance Company, the tortfeasor left the state and could not be found even by private investigators. That's the case where the state of Washington decided to apply this standard. The Missouri case, the defendant could never be found again and the police lost the accident report. That was the case that Missouri tilted the lever to follow this burden shifting. And although not cited, Alabama Supreme Court has twice ruled on this, once against the claimant, once in favor of the claimant. And the distinction between the two is wonderful. They ruled against the claimant when they served the tortfeasor at a P.O. box and then attempted to do it by publication. And that was ruled not a reasonable effort because they had no way of ever gotten notice of the lawsuit. In the second case, Alabama ruled that it was enough to shift this burden because much more effort was made, including the hiring of private investigators, which is what we have here. We chased Tanya Haynes, we found her, we got her served, and she still didn't respond. I think that meets the burden of shifting this burden to the insurance company under the circumstances. And that's all I have. Thank you. Thank you, counsel. Any questions? No. All right. The court will take this matter under advisement and will now stand in recess. Thank you.